# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ZOND, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 13-cv-11577-DPW |
| | ) |
| ADVANCED MICRO DEVICES, INC. and | ) **JURY TRIAL DEMANDED** |
| GLOBALFOUNDRIES U.S., INC., | ) |
| GLOBALFOUNDRIES DRESDEN | ) |
| MODULE ONE LLC & CO. KG, and | ) **MOTION FOR LEAVE TO FILE** |
| GLOBALFOUNDRIES DRESDEN | ) **GRANTED ON MAY 29, 2014** |
| MODULE TWO LLC & CO. KG, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS ADVANCED
MICRO DEVICES, INC., GLOBALFOUNDRIES U.S., INC.,
GLOBALFOUNDRIES DRESDEN MODULE ONE LLC & CO. KG, AND
GLOBALFOUNDRIES DRESDEN MODULE TWO LLC & CO. KG'S MOTION
TO STAY CASE**

# TABLE OF CONTENTS

I. Introduction ..............................................................................................................1

II. Recent Developments ...............................................................................................1

III. Argument .................................................................................................................2

    A.    AMD and GLOBALFOUNDRIES Will Be Prejudiced If the Court Denies the Stay ...........................................................................................................2

    B.    AMD and GLOBALFOUNDRIES Are Not Seeking to Circumvent the Required Estoppel Resulting from the IPR Proceedings ...........................................4

        1.    The District of Massachusetts Does Not Require a Defendant to Waive All Invalidity Claims before Receiving a Stay Pending IPR ...........5

        2.    Courts May Exercise Discretion in Deciding What Form of Estoppel, If Any, is Appropriate in Light of a Stay ...................................6

    C.    AMD's and GLOBALFOUNDRIES' Motion to Stay is Ripe ...............................7

    D.    Plaintiff cannot Claim Prejudice that Stems Directly from Their Own Litigation Management ...........................................................................................9

        1.    Plaintiff Chose to Maintain Separate Litigations and Asserted an Unreasonable Number of Claims ...............................................................9

        2.    Plaintiff Will not Suffer Any Irreparable Harm ........................................11

IV. Conclusion .............................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012).............................................................................12

*Brixham Solutions Ltd. v. Juniper Networks, Inc.,*
    Case No. 3-13-cv-00616 (N.D. Cal. Feb. 12, 2013) ..........................................9, 10

*Canatelo LLC v. Axis Comms. AB,*
    Case No. 13-1227-GMS (D. Del. May 14, 2014) ...............................................7, 9

*Commonwealth Scientific & Indus. Research Organisation v. Buffalo Tech. Inc.,*
    492 F. Supp. 2d 600 (E.D. Tex. 2007)...............................................................11, 12

*Cynosure, Inc. v. Cooltouch Inc.,*
    CIV A. 08-10026-NMG, 2009 WL 2462565 (D. Mass. Aug. 10, 2009)..................9

*Davol, Inc. v. Atrium Med. Corp.,*
    No. 12-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013) ...............................7

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)..........................................................................................11, 12

*Evolutionary Intelligence v. Sprint,*
    Case No. C-13-4513 (N.D. Cal. Feb. 28, 2014)...................................................5, 6

*Fresenius USA, Inc. v. Baxter Intern., Inc.,*
    721 F.3d 1330 (Fed. Cir. 2013)................................................................................3

*Intellectual Ventures II LLC v. First National Bank of Omaha,*
    Case No. 8-13-cv-00167 (D. Neb. May 29, 2013)...................................................9

*Krippelz v. Ford Motor Co.,*
    667 F.3d 1261 (Fed. Cir. 2012)................................................................................3

*Riverbed Technology, Inc. v. Silver Peak Systems, Inc.,*
    Case No. 13-cv-02980 (N.D. Cal. June 28, 2013) ...................................................9

*Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.,*
    436 F. Supp. 2d 252 (D. Mass. 2006) ......................................................................9

*Star Envirotech, Inc. v. Redline Detection, LLC,*
    2013 WL 1716068 (C.D. Cal. April 3, 2014) ........................................................10

ii

*SunPower Corporation v. PanelClaw, Inc.*,
    Case No. 1-12-cv-01633 (D. Del.) ......................................................................8, 9

## STATUTES

35 U.S.C. § 103 ..........................................................................................................7

35 U.S.C. §311(b) ......................................................................................................7

35 U.S.C. § 315(e)(2) ..............................................................................................6, 7

## OTHER AUTHORITIES

*PTAB AIA Trial Roundtables Slides*, UNITED STATES PATENT AND TRADEMARK OFFICE
    (May 3, 2014),
    http://www.uspto.gov/ip/boards/bpai/ptab_roundtable__slides_may_update__201405
    03.pdf ..................................................................................................................7

## I.      INTRODUCTION

Zond, Inc. (hereinafter "Plaintiff") filed an opposition brief (Dkt. 63, "Opposition") that mischaracterizes the Motion to Stay filed by AMD and GLOBALFOUNDRIES.  Plaintiff's Opposition focuses on whether the moving parties file their own petitions for *inter partes* review ("IPR")—a factor that is irrelevant to the stay analysis—and ignores relevant precedents from this District that address similar cases.  This District has already held that "a stay will promote efficiency and economy."  Dkt. Nos. 60-2 and 60-3.

Plaintiff incorrectly claims that AMD's and GLOBALFOUNDRIES' Motion to Stay is premature because (1) the United States Patent and Trademark Office ("USPTO") has yet to institute IPRs based on Intel's petitions, and (2) because AMD and GLOBALFOUNDRIES have not elected to waive their entire invalidity case in exchange for a stay.  Neither argument is persuasive.  First, Plaintiff implicitly admits that the USPTO institutes reviews for well over 80% of IPR petitions.  Second, Plaintiff identifies no authority requiring the moving parties to waive their entire invalidity case in exchange for a stay.

Plaintiff also fails to show any prejudice it would suffer as a result of the stay.  On the one hand, Plaintiff chose to add defendants in piecemeal fashion in seven separate and unrelated cases over the course of six months; on the other hand, Plaintiff attempts to turn around and claim that it would be prejudicial to delay the case because various defendant groups are filing individual IPR petitions which may be consolidated by the USPTO.  Thus, any delay that may result from having eight defendant groups file and join IPR petitions is a direct result of Plaintiff's own litigation strategy.  Moreover, Plaintiff's claim that a stay would cause irreparable harm is legally unsupportable.

## II.     RECENT DEVELOPMENTS

There have been a number of developments in the seven Zond cases since AMD and GLOBALFOUNDRIES filed their Motion to Stay.  A number of Zond defendants are working toward filing their own IPR petitions in addition to those already filed by Intel.  TSMC has

started to file its own IPRs and has filed thirteen petitions as of the date of this reply.[1]  Intel has

continued to file its IPRs, including two recent petitions filed on May 16 and 27, 2014.[2]

Additionally, both GLOBALFOUNDRIES and AMD intend to file IPR petitions and seek

joinder with the pending IPR petitions filed by Intel and TSMC.  These petitions will seek

review of all of the asserted patents and will be filed on a rolling basis before July 2, 2014.

Additionally, in the Gillette case, the parties have filed a joint stipulation dropping

Plaintiff's claims that Gillette's Commercial Razor Blades infringe the Patents-in-Suit and

dropping Gillette's counterclaims seeking a declaratory judgment that Gillette's Commercial

Razor Blades do not infringe the Patents-in-Suit.  *See* Case No. 1:13-CV-11567, Dkt. 77.  All

other claims and defenses remain at issue in the Gillette case.[3]

## III.   ARGUMENT

### A.   AMD and GLOBALFOUNDRIES Will Be Prejudiced If the Court Denies the Stay

Plaintiff's Opposition fails to address the prejudice AMD and GLOBALFOUNDRIES

will suffer if stay is denied, and simply makes the boilerplate submission that the moving parties

will suffer no hardship.  Opposition at 14.  That position ignores the reality of this case.  The risk

of prejudice to AMD and GLOBALFOUNDRIES is substantial because, unless this case is

stayed, AMD and GLOBALFOUNDRIES will be forced to defend itself in a lengthy and

expensive litigation against allegations of infringement for patent claims that may later be found

---

[1]     TSMC has filed thirteen petitions that seek review of several patents-in-suit.  *See* IPR2014-00781 (filed on May 19, 2014); IPR2014-00782 (filed on May 19, 2014); IPR2014-00800 (filed May 22, 2014); IPR2014-00802 (filed May 22, 2014); IPR2014-00799 (filed on May 22, 2014); and IPR2014-00803 (filed on May 22, 2014); IPR2014-00807 (filed May 23, 2014); IPR2014-00808 (filed May 23, 2014); IPR2014-00805 (filed May 23, 2014); IPR2014-00818 (filed on May 27, 2014); IPR2014-00819 (filed on May 27, 2014); IPR2014-00821 (filed on May 27, 2014); IPR2014-00827 (filed on May 28, 2014) (all available at https://ptabtrials.uspto.gov).

[2]     *See* IPR2014-00765 (filed on May 16, 2014); IPR2014-00820 (filed on May 27, 2014) (both available at https://ptabtrials.uspto.gov).

[3]     Immediately after filing their Motion to Dismiss, AMD and GLOBALFOUNDRIES realized that their Memorandum of Point and Authorities made an inadvertent error and stated that the Gillette case had been dismissed with prejudice.  Through its local counsel, GLOBALFOUNDRIES reached out to the Court on May 12, 2014, and inquired about the procedure for correcting this error.

invalid or substantially modified.  This has a direct effect on the scope of the case and the moving parties' defenses.  Regardless of who initiated the IPRs, Plaintiff cannot dispute that there are now over thirty IPR petitions pending before the USPTO against the patents-in-suit. Plaintiff also cannot dispute the statistics from past IPRs demonstrating the overwhelming likelihood that the PTAB will institute proceedings on most or all of the patent claims at issue in this case.  *See* Dkt. No. 60-6 and 60-7 (showing that well over 80% of IPR petitions result in a review, and over 90% of reviewed claims are canceled).  Nevertheless, Plaintiff asks this Court to require AMD and GLOBALFOUNDRIES to litigate claims that may be amended or revoked.

This undoubtedly harms AMD and GLOBALFOUNDRIES because they will need to prepare defenses against claims that will almost certainly change in scope during the pendency of the district court litigation.  For example, if certain patent claims are canceled or amended through a final decision by the PTAB—as has happened in every concluded IPR to date—AMD and GLOBALFOUNDRIES will have wasted substantial resources litigating patent claims that have no legal effect.  *See Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[I]f the original claim is cancelled or amended to cure invalidity, the patentee's cause of action is extinguished and the suit fails.").  Additionally, if Zond makes limiting statements before the USPTO in an attempt to differentiate its patents from the prior art, such statements would narrow the scope of patent claims; this would require AMD and GLOBALFOUNDRIES to ask the Court to re-construe patent claims after the *Markman* proceeding is already completed.  *See Krippelz v. Ford Motor Co.,* 667 F.3d 1261 (Fed. Cir. 2012) ("A patentee's statements during reexamination can be considered during claim construction, in keeping with the doctrine of prosecution.").  If the requested stay is denied, this case will likely be nearing trial by the completion of the pending IPRs.  By then, AMD and GLOBALFOUNDRIES would have expended significant resources in fact and expert discovery, and this Court would have wasted its valuable judicial resources construing claim terms and

3

deciding motions for patent claims that will likely be changed or canceled.[4]  Thus, the risk of prejudice to AMD and GLOBALFOUNDRIES is substantial and undeniable.

The potential harm to AMD and GLOBALFOUNDRIES is heightened by the fact they are not participants in the pending IPR proceedings.  While Plaintiff is a party to those IPR proceedings and can participate fully in all hearings and depositions, AMD and GLOBALFOUNDRIES will be litigating patent claims in this Court without real-time access to documents and testimony in the parallel IPR proceedings.  If a Zond representative makes a statement during an IPR deposition that narrows the scope of the patent claims, AMD and GLOBALFOUNDRIES would have no way of learning that admission until they obtain the deposition transcript from Plaintiff or the USPTO.  Thus, if a stay is not granted, AMD and GLOBALFOUNDRIES would be required to constantly monitor more than thirty IPR proceedings filed by other parties throughout the pendency of the district court litigation.[5]

### B.    AMD and GLOBALFOUNDRIES Are Not Seeking to Circumvent the Required Estoppel Resulting from the IPR Proceedings

Plaintiff's Opposition mischaracterizes AMD's and GLOBALFOUNDRIES' motion as a tactical maneuver to obtain the benefit of Intel's IPRs while avoiding any estoppel that would result from the IPR proceedings.  *See* Opposition at 10.  This is wholly incorrect.

First, as Judge Stearns recognized in the SK hynix case, "a stay will promote efficiency and economy" because "the IPR process will likely simplify and clarify the dispute for the parties, and the Court will benefit from the expert claim analysis of the PTO."  *See* Case No. 1:13-cv-11591, Dkt. No. 60-3.[6]  These judicial economy benefits apply to this case regardless of who initiated the IPRs.  Plaintiff fails to explain why these well-recognized benefits are inapplicable to the moving parties merely because another party initiated the IPR proceedings.

---

[4]       Even if the USPTO amends the current claims or adds new claims to the patents-in-suit, the IPRs fundamentally alter the applicable damages period and, consequently, the parties' exposure in this litigation.
[5]       For this and other reasons, AMD and GLOBALFOUNDRIES have decided to file their own IPRs and attempt to seek joinder with the pending IPRs.
[6]       Following the stay granted by Judge Stearns to SK hynix, the case promptly settled.

4

Second, Plaintiff concocts a false rule that this District requires defendants to waive their entire invalidity case in order to be granted a stay pending IPR.  This type of legislation through litigation is improper and represents a legal fiction that does not apply to AMD's and GLOBALFOUNDRIES' request for a stay.  Plaintiff's argument also goes against the weight of the authority, as courts in this and other districts have regularly stayed cases pending IPRs (or reexaminations) for defendants who are not the petitioners.  *See* Dkt. No. 60-3; *see also, Evolutionary Intelligence v. Sprint*, Case No. C-13-4513, Dkt. 123 at 9 (N.D. Cal. Feb. 28, 2014).

Third, Plaintiff's argument is irrelevant in light of the decision by AMD and GLOBALFOUNDRIES to file their own IPR petitions.  These petitions will subject AMD and GLOBALFOUNDRIES to the same statutory estoppel as the original petitioners.

      1.    <u>The District of Massachusetts Does Not Require a Defendant to Waive All Invalidity Claims before Receiving a Stay Pending IPR</u>

Plaintiff falsely claims that this District requires waiver of all invalidity claims "in order for a stay to be granted, based on their own IPRs, much less somebody else's."  Opposition at 15.  In reaching this sweeping (and incorrect) conclusion regarding the entire District, Plaintiff cites only to a transcript of a *Markman* hearing before Judge Young, not an order addressing a motion for a stay.  *See* Opposition at 15.  Based on this, Plaintiff asks this Court to infer that the entire District requires such waiver and that Judge Young's denial of Fujitsu's and TSMC's motion to stay confirms this practice.  This conclusion ignores the fact that Judge Young's order indicates only that TSMC's and Fujitsu's motion was dismissed without prejudice as premature.[7]

Moreover, Plaintiff ignores two recent orders from Judge Stearns, who did not follow what Plaintiff has mischaracterized as "the required practice in this District" when he granted

---

[7]    The facts of the TSMC/Fujitsu case are also clearly distinguishable from this case.  The parties in the TSMC/Fujitsu matter have already exchanged infringement and invalidity contentions, began fact discovery (including depositions), and have the *Markman* hearing scheduling in August and trial scheduled for December.  By comparison, the parties in this case have yet to hold a case management conference.  Thus, Judge Young's denial of stay does not suggest that a stay is inappropriate in this case.

Intel's motion to stay pending its IPR and *sua sponte* stayed the case against SK hynix.   Case

No. 1:13-cv-11570, Dkt. 120.   In its motion to stay, Intel noted (and Judge Stearns subsequently

agreed) that it is estopped from arguing invalidity on any "ground that Intel raised or could have

raised during the IPRs," as is required by the statutory provision of 35 U.S.C. § 315(e)(2).   Case

No. 1:13-cv-11570, Dkt. 87 at 9.   Judge Stearns also stayed the SK hynix case without requiring

any waiver of invalidity claims.   Case No. 1:13-cv-11591, Dkt. 66.   Neither case applied

Plaintiff's concocted, district-wide "rule" of requiring a full waiver of all invalidity defenses.

Moreover, AMD and GLOBALFOUNDRIES are unaware of any district that has established a

blanket rule requiring waiver of all invalidity defenses in exchange for a stay pending IPRs.

> 2.      Courts May Exercise Discretion in Deciding What Form of Estoppel, If
>         Any, is Appropriate in Light of a Stay

Despite Plaintiff's contention that a defendant is required to waive all its invalidity claims

to receive a stay, the Court has discretion over what conditions, if any, should attach to a stay.

For example, the Northern District of California has granted a stay pending IPR where the parties

agree to be estopped from asserting any invalidity claims that were actually adjudicated during

the IPR proceedings.  *See Evolutionary Intelligence v. Sprint*, Case No. C-13-4513, Dkt. 123 at 9

(N.D. Cal. Feb. 28, 2014) ("The court thus conditions the stay on Sprint's agreement to be

estopped only from asserting any invalidity contention that was actually raised and finally

adjudicated in the IPR proceedings.").   AMD and GLOBALFOUNDRIES propose that this is a

reasonable form of estoppel since it is tailored to guarantee that issues adjudicated by the

USPTO will not be re-litigated in the district court proceedings.   Thus, if a stay is granted, AMD

and GLOBALFOUNDRIES agree to be estopped from asserting any invalidity contention that

was actually raised and finally adjudicated in any IPR proceeding relating to the patents-in-suit

filed by defendants in other Zond cases pending in this District.   This agreed estoppel ensures

that a stay will simplify issues for trial.

In addition, AMD and GLOBALFOUNDRIES are in the process of filing their own IPR

petitions and would be statutorily estopped from seeking invalidity on "any ground that the

petitioner raised or reasonably could have raised during that inter partes review" for their own

IPR petitions.  35 U.S.C. § 315(e)(2).  This statutory language is carefully crafted because not all

invalidity defenses can be raised in an IPR proceeding.  *See* 35 U.S.C. §311(b) (limiting IPRs to

defenses based on "prior art consisting of patents or printed publications").  Plaintiff has not, and

cannot, provide any basis for requiring the waiver of defenses that could not be raised, let alone

adjudicated, in an IPR proceeding.

### C.       AMD's and GLOBALFOUNDRIES' Motion to Stay is Ripe

Plaintiff's Opposition attempts to argue that AMD's and GLOBALFOUNDRIES'

Motion to Stay is premature because the PTAB has not decided whether to institute IPR

proceedings on Intel's petitions.  But Plaintiff does not dispute that the PTAB has instituted

reviews for the overwhelming majority of past IPR petitions.  *See* Dkt. No. 60 at 8-9; *Canatelo*

*LLC v. Axis Comms. AB*, Case No. 13-1227-GMS, Dkt. No. 57 at 2 n.3 (D. Del. May 14, 2014)

("statistics indicate that it is very likely the PTAB will grant the IPR petitions"); *Davol, Inc. v.*

*Atrium Med. Corp*., No. 12-958-GMS, 2013 WL 3013343, at *5 n.7 (D. Del. June 17, 2013)

("statistics … indicate that review has been granted in almost all the *inter partes* review petitions

considered by the PTO").  Without any factual support, Plaintiff claims that the pending IPR

petitions are unlikely to succeed because they rely on obviousness defenses.  Opposition at 17.

Plaintiff's claim is demonstrably false, since statistics from the USPTO show that 87% of IPR

final decisions have invalidated patent claims on obviousness grounds under 35 U.S.C. § 103.[8]

Plaintiff's Opposition also criticizes Intel's pursuit of filing its IPR petitions as being

dilatory and based on unfulfilled "promises" to finish filing its petitions in a prompt manner;

however, by its own admission, Plaintiff concedes that Intel's IPR filings constitutes "the largest

number of IPR petitions filed in response to a single litigation," which is a direct result of

---

[8]       *See* Exhibit 1 (*PTAB AIA Trial Roundtables Slides*, UNITED STATES PATENT AND
TRADEMARK OFFICE (May 3, 2014),
http://www.uspto.gov/ip/boards/bpai/ptab_roundtable__slides_may_update__20140503.pdf) at
49.

Plaintiff's asserting an unreasonable number of patents and claims against the defendants. Opposition at 9.  It is incongruous for Plaintiff to admit that this is the largest IPR undertaking to date only to criticize Intel for taking additional time to file all petitions necessary to cover the 275 claims of the patents-in-suit.  Intel has not abandoned its promise to finish filing its IPR as its most recent petitions were filed on May 16 and 27, 2014.  *See* IPR2014-00765; IPR2014-00820 (available at https://ptabtrials.uspto.gov).

Plaintiff's Opposition also criticizes Intel for waiting some seven months to begin filing IPR petitions; based on this, Plaintiff concludes that it would be prejudicial to grant AMD's and GLOBALFOUNDRIES' Motion to Stay.  AMD and GLOBALFOUNDRIES fail to see how this seven month delay is applicable to ***this litigation***.  Courts have found the one year statutory deadline to be a reasonable deadline in the absence of dilatory motive such that it should not matter whether the petitions are filed toward the beginning or end of the deadline.[9]  Plaintiff admits that Intel began to file its IPR petitions on February 20, 2014, well within the one year statutory deadline of July 2, 2014.  Opposition at 2.  Nonetheless, any alleged delay by Intel in filing its IPRs is irrelevant to any prejudice that Plaintiff may suffer if this litigation is stayed. GLOBALFOUNDRIES was not added as a defendant until December 5, 2014; had GLOBALFOUNDRIES filed IPR petitions on the same day that it was sued, the PTAB would still not have reached its deadline to issue an institution decision as of the date of this reply.  As a result, Plaintiff cannot claim that it will be prejudiced by any delay in filing IPR petitions.

Finally, Plaintiff's Opposition makes a wide-sweeping and incorrect conclusion that courts do not grant stays pending IPR based solely on the filing of petitions.  To the contrary, numerous recent cases from various jurisdictions have granted stays based solely on petitions that have not been decided by the PTAB.  Rather than berate the Court with a long string cite, AMD and GLOBALFOUNDRIES list a few recent examples and can supplement these cases if

---

[9]     *See SunPower Corporation v. PanelClaw, Inc.*, Case No. 1-12-cv-01633 (D. Del.), Dkt. 43 (granting stay when IPR petitions were filed on the eve of the one year deadline when the plaintiff refused to indicate what claims are asserted).

8

the Court so desires.[10]  It is also worth noting that Plaintiff again disregards the most relevant

precedent on this matter: Judge Stearns granted Intel's Motion to Stay despite the pendency of its

petitions.

### D. Plaintiff cannot Claim Prejudice that Stems Directly from Their Own Litigation Management

In its Opposition, Plaintiff claims that the stay will result in prejudice due to the length of

the stay and due to irreparable harm from increased market entry barriers.  These arguments have

no factual or legal support.

#### 1. Plaintiff Chose to Maintain Separate Litigations and Asserted an Unreasonable Number of Claims

As a threshold issue, Plaintiff's arguments pertaining to any potential prejudice are

premised on the speculation that the PTAB may exercise its right to extend the IPR proceedings

for six months beyond the 18-month deadline to issue a decision.  Opposition at 11.  Unfounded

speculation aside, Plaintiff concludes that an extended IPR proceeding is inherently prejudicial

based on the "District's practice . . . to deny stay[s] pending reexamination because of

anticipated delays of 21 months or more."  Opposition at 10.  In reaching this conclusion,

Plaintiff relies on two cases that predate the newly-added *inter partes* review process.[11]  Plaintiff

---

[10] *See, e.g., Canatelo LLC v. Axis Comms. AB*, Case No. 13-1227-GMS, Dkt. No. 57 at 2 (D. Del. May 14, 2014) (granting stay before institution of reviews based on past statistics); *Intellectual Ventures II LLC v. First National Bank of Omaha*, Case No. 8-13-cv-00167 (D. Neb. May 29, 2013), Dkt. 67 (all claims asserted against Defendant for each patent-in-suit are either the subject of a pending IPR petition or an IPR proceeding); *Brixham Solutions Ltd. v. Juniper Networks, Inc.*, Case No. 3-13-cv-00616, Dkt. 77 (N.D. Cal. Feb. 12, 2013) (granting stay before institution of IPRs because "[g]iven the high rate at which the PTO grants petitions for inter partes review, even a petition requesting review is likely to simplify the issues in the case . . ."); *SunPower Corporation v. PanelClaw, Inc.*, Case No. 1-12-cv-01633, Dkt. 43 (D. Del. May 16, 2014) ("The court concludes that the issues before the court would be simplified should the Patent Trial and Appeal Board ('PTAB') grant PanelClaw's IPR petitions and review the claims"); *Riverbed Technology, Inc. v. Silver Peak Systems, Inc.*, Case No. 13-cv-02980, Dkt. 42 (N.D. Cal. June 28, 2013) ("The fact that the PTAB has not yet determined whether it will grant the requests for IPR does not alter the Court's findings.").
[11] Plaintiff cites to two cases: *Cynosure, Inc. v. Cooltouch Inc.*, CIV A. 08-10026-NMG, 2009 WL 2462565 (D. Mass. Aug. 10, 2009) and *Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*, 436 F. Supp. 2d 252 (D. Mass. 2006).  Both cases involved a defendant seeking *ex parte* review of a patent.

tries to fit the square peg in a round hole by concluding that cases denying a stay pending *ex parte* reexamination (which, unlike IPRs, has no set duration) warrant a similar denial in this case, despite the fact that AMD and GLOBALFOUNDRIES seek a stay pending the new *inter partes* review procedure. *See Brixham Solutions Ltd. v. Juniper Networks, Inc.*, Case No. 3-13-cv-00616 (N.D. Cal. Feb. 12, 2013), Dkt. 77 (granting stay pending IPR based, in part, because "the potential delay associated with *inter partes* review is not significant in comparison to the post-grant review procedures that existed prior to the enactment of the America Invents Act. . ."); *Star Envirotech, Inc. v. Redline Detection, LLC*, 2013 WL 1716068, at *2 (C.D. Cal. April 3, 2014) (". . . delay caused by the new IPR procedure is significantly less than the delay caused by the old procedure.").

Notwithstanding its tenuous conclusion that the PTAB will extend the proceedings, Plaintiff cannot claim that such an extension is the fault of all eight defendant groups; rather, **Plaintiff** set the stage for such complex IPR proceedings. Plaintiff blames the defendants for creating the complex IPR proceedings by filing individual IPR petitions which will likely be joined with Intel's. Opposition at 11. Plaintiff also blames Gillette for filing an additional six IPRs on three patents not asserted against any other defendants. *Id*. But Plaintiff ignores the fact that this complex structure is the result of its own actions of (i) piecemeal addition of defendants over the course of six months;[12] (ii) choosing not to file the cases as related cases;[13] (iii) asserting three additional patents against only Gillette;[14] and (iv) asserting an unreasonable number of claims while refusing to limit them.[15] Thus, any delay beyond the statutory period of

---

[12]    Plaintiff filed its first case against Gillette on July 1, 2013. *See* Case No. 1:13-cv-11567, Dkt. 1. Plaintiff added the last defendants, GLOBALFOUNDRIES Dresden Module One LLC & Co. KG and GLOBALFOUNDRIES Dresden Module Two LLC & Co. KG on January 24, 2014. *See* Case No. 1:13-cv-11577, Dkt. 36.

[13]    In its brief in opposition to Fujitsu's and TSMC's motion to consolidate, argued against relating or consolidating the various cases. *See* Case No. 1:13-cv-11567, Dkt. 37 at 11-14.

[14]    *See* Case No. 1:13-cv-11567, Dkt. 1.

[15]    Both Intel and SK hynix had to move the court in order to limit the number of asserted claims. *See* Case No. 1:13-cv-11570, Dkt. 76 (Intel moved the court to require Zond to limit the 247 claims asserted by Plaintiff's infringement contentions); Case No. 1:13-cv-11591, Dkt. 55 (SK hynix moved the court to require Zond to limit the 116 claims asserted by Plaintiff's infringement contentions).

18 months will be the result of Plaintiff's own gamesmanship and not the result of any action by the moving parties.

Moreover, as the moving parties identified in their opening brief, the potential for delay is not sufficient to establish undue prejudice. *See* Dkt. No. 60 at 8. Plaintiff's own conduct in this case further demonstrates that it will not be prejudiced by a stay. The patents-in-suit issued between 2004 and 2010. *See* Dkt. No. 36-1 to 36-7. Yet, Plaintiff waited nearly a decade after the issuance of the first patent and more than three years after the issuance of the last patent before filing this case. Even after this case was filed, Plaintiff did not show any urgency in prosecuting its case against AMD and GLOBALFOUNDRIES. Instead, Plaintiff amended its complaint four times and sought two continuances of the case management conference which resulted in an initial Case Management Conference scheduled more than eleven months after the filing of this action. *See* Dkt. Nos. 15, 19, 27, 29, 36, and 54. Thus, Plaintiff has no basis to argue now that it would be unduly prejudiced by an 18-month review of the patents-in-suit by the USPTO.

### 2.   Plaintiff Will not Suffer Any Irreparable Harm

Ignoring Plaintiff's own admission that "it has little chance of demonstrating irreparable harm" (Opposition at 15), Plaintiff's Opposition devotes a long paragraph to its tenuous claim that it will suffer additional irreparable harm if the case is stayed. Opposition at 13. The majority of this section is dedicated to the argument that a plaintiff can receive a permanent injunction despite the fact that they do not compete with the defendant(s). To make this point, Plaintiff points to the *eBay v. MercExchange* case as well as a case from the Eastern District of Texas, *Commonwealth Sci. and Indus. Research Org. v. Buffalo Tech.* Opposition at 13. However, Plaintiff's reliance on these cases is unfounded as both cases reject the categorical exclusion of non-competitors from receiving permanent injunctions based on scenarios where the patent-holders provide ***research services***.[16]

---

[16]    *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006) ("But traditional equitable principles do not permit such broad classifications. For example, some patent holders, such as

Plaintiff admits that it does not compete with AMD and GLOBALFOUNDRIES; instead, Plaintiff's argument is based on irreparable harm resulting from "market entry barriers" for Plaintiff's subsidiary, Zpulser, to enter the power supply market. As a company seeking to monetize its patents, Plaintiff does not qualify as the sort of patent holder that the *eBay* and *Commonwealth Scientific* courts were trying to protect. Plaintiff fails to cite a single post-*eBay* case in which a non-competitor commercial entity received a permanent injunction based on the "market entry barrier" theory.[17] Thus, Plaintiff has failed to demonstrate any plausible irreparable harm.

Finally, Plaintiff argues that a stay may cause prejudice by delaying the testimony of the named inventor, Dr. Chistyakov, who suffers from an ongoing medical condition for which he is currently being treated. *See* Opposition at 12. Given that the TSMC and Fujitsu case is currently scheduled to go to trial in December 2014, AMD and GLOBALFOUNDRIES are willing to coordinate with Zond to take Dr. Chistyakov's deposition around the same time as TSMC and Fujitsu, notwithstanding a stay of this litigation. By coordinating Dr. Chsityakov's deposition with Fujitsu and TSMC while the current case is stayed, Plaintiff will avoid any prejudice from delaying Dr. Chsityakov's testimony in light of his medical condition.

## IV. CONCLUSION

For the foregoing reasons, in addition to the reasons set forth in their motion, AMD and GLOBALFOUNDRIES respectfully submit that judicial comity and case efficiencies warrant a stay or administrative closure of this case pending the outcome of IPR petitions.

---

university researchers or self-made inventors, might reasonably prefer to license their patents, rather than undertake efforts to secure the financing necessary to bring their works to market themselves."); *Commonwealth Scientific & Indus. Research Organisation v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 607 (E.D. Tex. 2007) ("Because the work of research institutions such as CSIRO is often fundamental to scientific advancement, it merits strong patent protection.").

[17] In *ActiveVideo Networks, Inc. v. Verizon Communs., Inc*, the patent owner relied on a similar theory and attempted to argue that it would be irreparably harmed because the alleged infringement "impedes on ActiveVideo's ability to introduce its patented technology to the portion of the market that Verizon controls." 694 F.3d 1312 (Fed. Cir. 2012). The Federal Circuit rejected ActiveVideo's argument and found that the district court's grant of injunctive relief was "clearly erroneous" in light of adequate remedies at law and "no direct competition between Verizon and ActiveVideo." *Id.* at 1340.

Dated:   May 29, 2014                    Respectfully submitted,

                                         By:   /s/ Paul J. Cronin
                                               Stephen J. Brake (BBO# 546972)
                                               Paul J. Cronin (BBO# 641230)
                                               Eugene A. Feher (BBO# 550762)
                                               NUTTER MCCLENNEN & FISH LLP
                                               Seaport West, 155 Seaport Boulevard
                                               Boston, MA 02210
                                               Telephone: (617) 439-2223
                                               Facsimile:  (617) 310-9223
                                               Email: sbrake@nutter.com
                                               Email: pcronin@nutter.com
                                               Email: efeher@nutter.com

                                               Bijal V. Vakil  (*Pro Hac Vice*)
                                               Shamita D. Etienne-Cummings  (*Pro Hac Vice*)
                                               WHITE & CASE LLP
                                               3000 El Camino Real
                                               5 Palo Alto Square, 9th Floor
                                               Palo Alto, CA 94306
                                               Telephone: (650) 213-0300
                                               Facsimile: (650) 213-8158
                                               Email: bvakil@whitecase.com
                                               Email: setienne@whitecase.com

                                               David M. Tennant (*Pro Hac Vice*)
                                               WHITE & CASE LLP
                                               701 Thirteenth Street, NW
                                               Washington, DC 20005-3807
                                               Telephone: (202) 626 -3600
                                               Facsimile: (202) 639-9355
                                               Email: dtennant@whitecase.com

                                               **Attorneys for Defendants GLOBALFOUNDRIES
                                               U.S., INC., GLOBALFOUNDRIES Dresden Module
                                               One LLC & Co. KG, and GLOBALFOUNDRIES
                                               Dresden Module Two LLC & Co. KG**

Dated:   May 29, 2014                    Respectfully submitted,

                                         By:   /s/ Joanne L. Wisner

                                               13

Joanne L. Wisner (BBO# 646301)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: 202-383-5300
Facsimile: 202-383-5414
Email:  jwisner@omm.com

Ryan K. Yagura (*Pro Hac Vice*)
Xin-Yi Zhou (*Pro Hac Vice*)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407
Email: ryagura@omm.com
Email: vzhou@omm.com

**Attorneys for Defendant Advanced Micro
Devices Inc.**

14

**<u>CERTIFICATE OF SERVICE</u>**

I, Paul J. Cronin, hereby certify that a true copy of the above document was served upon counsel of record for the plaintiff through the Court's electronic court filing (ECF) system, this 29th day of May, 2014.

By:   _/ s/ Paul J. Cronin_____
                Paul J. Cronin

2530922.1